UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA**

**v.**                                              Criminal No. 2:15cr80

**DEYONTA HINTON,**

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Deyonta Hinton's ("Defendant") motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 284. Defendant asserts that he is entitled to compassionate release for two reasons. First, Defendant cites the risks to his health posed by the COVID-19 pandemic. Second, Defendant claims that, in light of post-sentencing Fourth Circuit case law, he would no longer be a "career offender" under the federal Sentencing Guidelines, and therefore his advisory Guideline range today would be lower than his Guideline range when he was sentenced. The Government filed a brief in opposition to Defendant's compassionate release motion, ECF No. 285, and Defendant filed a reply, ECF No. 287.[1] Defendant also filed two supplemental briefs, ECF Nos. 289, 300, which the

---

[1] Because Defendant filed his reply brief late, he filed a motion for an extension of time to file a reply on the same day that he filed his reply brief. ECF No. 286. For good cause shown, the Court **GRANTS** Defendant's unopposed motion for an extension, ECF No. 286, and considers his reply brief alongside his motion for compassionate release.

Court has considered. For the reasons stated below, Defendant's compassionate release motion is **DISMISSED AND DENIED**.

## I. BACKGROUND

On July 8, 2015, a grand jury returned a 44-count indictment against Defendant and six co-defendants, charging a variety of drug trafficking offenses. ECF No. 1. The indictment charged Defendant in particular with 10 counts: one count of conspiracy to manufacture, distribute, and possess with intent to distribute more than one kilogram of heroin, in violation of 21 U.S.C. § 846; and nine counts of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). ECF No. 1. Pursuant to a written plea agreement, Defendant pled guilty to the § 846 drug conspiracy count in exchange for the dismissal of the nine distribution counts. ECF No. 109.

At sentencing, Defendant was assigned a Total Offense Level of 32 and a Criminal History Category of IV, resulting in an advisory Guideline range of 168 to 210 months' imprisonment. Consistent with Fourth Circuit case law at the time, however, Defendant was classified as a "career offender." As a result of such classification, Defendant's Total Offense Level increased to 34, and his Criminal History Category increased to VI, resulting in an advisory Guideline range of 262 to 327 months' imprisonment. ECF No. 182, at 18. On December 10, 2015, the Court sentenced

Defendant to 262 months' imprisonment. ECF No. 183. Later, the Court reduced Defendant's sentence to 196 months' imprisonment.

Defendant received the career offender designation because he was previously convicted of two prior "controlled substance offenses" and his instant § 846 conspiracy conviction also qualified as a controlled substance offense. ECF No. 182, at 10 (citing U.S.S.G. § 4B1.1). However, four years after Defendant was sentenced, the Fourth Circuit held that a § 846 conspiracy conviction is not categorically a "controlled substance offense" under the Guidelines. United States v. Norman, 935 F.3d 232, 239 (4th Cir. 2019). Thus, today, if a defendant's offense of conviction is a § 846 conspiracy offense, he is not a career offender under the Guidelines.

On September 24, 2021, Defendant filed the instant motion entitled, "Compassionate Release – Extraordinary and Compelling Reasons – FSA of 2018 – Section 3582(c)(1)(B)." ECF No. 284. Relying on Norman, Defendant's motion contends that the disparity between the sentence he received and the sentence he would receive if he were sentenced today constitutes an extraordinary and compelling reason warranting relief. Id. at 2-3. Defendant's motion also maintains that the risks posed by COVID-19 present an extraordinary and compelling circumstance warranting relief. Id. at 4-6.

3

On January 4, 2022, the Court issued an Order finding that Defendant's request for a sentence reduction pursuant to § 3582(c)(1)(<u>B</u>) lacked merit because the motion did not identify a statutory provision authorizing a sentence reduction. ECF No. 288, at 1. However, because Defendant's motion referenced "extraordinary and compelling" reasons for release, the Court alternatively construed Defendant's motion as a motion for compassionate release pursuant to § 3582(c)(1)(<u>A</u>) and directed Defendant to file a supplemental brief outlining whether he exhausted administrative remedies with the Bureau of Prisons ("BOP")—as is required under that statutory provision. <u>Id.</u> at 2. Defendant filed his supplemental brief on January 18, 2022, ECF No. 289, and the Government did not file a response. Defendant filed another supplemental brief on March 7, 2022. ECF No. 300.

## II. LEGAL STANDARD

As part of its broad changes to federal criminal sentencing, the First Step Act of 2018 amended the statute governing compassionate release, 18 U.S.C. § 3582(c)(1)(A), to give defendants the ability to file motions for sentence modifications "on their own behalf, so long as they first apply to the BOP." <u>United States v. McCoy</u>, 981 F.3d 271, 276 (4th Cir. 2020). Once a defendant completes that requirement—known as administrative exhaustion—a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant" a

4

reduction. 18 U.S.C. § 3582(c)(1)(A)(i). To determine what constitutes an "extraordinary and compelling circumstance," a court ordinarily must consider the "applicable policy statements issued by the United States Sentencing Commission." Id. § 3582(c)(1)(A). However, because the Fourth Circuit has held that there is no applicable policy statement as of yet that governs compassionate release motions filed by defendants, district courts in this circuit must "make their own independent determinations" about what constitutes an extraordinary and compelling circumstance for relief under § 3582(c)(1)(A). McCoy, 981 F.3d at 284.

If a district court concludes that extraordinary and compelling circumstances are present, it must then look to the sentencing factors in 18 U.S.C. § 3553(a) to determine how much of a reduction (if any) is appropriate. 18 U.S.C. § 3582(c)(1)(A). Those factors include:

> (1) [the] offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) just punishment (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

Rita v. United States, 551 U.S. 338, 347-48 (2007) (internal quotation marks omitted).

5

## III. DISCUSSION

### A. Exhaustion

Because Defendant has filed a compassionate release motion on his own behalf seeking relief based on "extraordinary and compelling circumstances," and because the Government has raised the issue of administrative exhaustion, ECF No. 285, at 15, the Court must first determine whether Defendant has exhausted administrative remedies. See United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021) (holding that the administrative exhaustion requirement "may be waived or forfeited" if not timely raised). A defendant may file a compassionate release motion with the court (1) after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf," or (2) after 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Under either approach, it is clear from "the statute's plain text" that a defendant must file a request with the BOP before filing a motion with the court. Muhammad, 16 F.4th at 130. Here, however, Defendant submitted a request for compassionate release with the warden of his facility two months after he filed his compassionate release motion with the Court. See ECF No. 289-1, at 2. Defendant's motion is therefore **DISMISSED** for failure to satisfy § 3582(c)(1)(A)'s administrative exhaustion requirement.

6

## B. Extraordinary and Compelling Circumstances

Despite his failure to comply with § 3582(c)(1)(A)'s administrative exhaustion requirement, Defendant ultimately did file a request with the BOP, and more than 30 days have passed without a response. Moreover, both parties have fully briefed the merits of Defendant's claims. Accordingly, the Court will alternatively consider the merits of Defendant's claims. After doing so, however, the Court finds that Defendant's motion fails because it does not present "extraordinary and compelling" reasons for a sentence reduction.[2]

### 1. COVID-19

Defendant contends that the "risks of serious illness and death" posed by the COVID-19 pandemic constitute extraordinary and compelling reasons for relief. ECF No. 284, at 5. For such claims, this Court has "found extraordinary and compelling reasons for compassionate release when an inmate shows <u>both</u> a particularized susceptibility to the disease and a particularized

---

[2] The overwhelming majority of Defendant's argument focuses on his <u>Norman</u> disparity and the risks posed by COVID-19. However, Defendant makes passing references to his mother, who is suffering from HIV, his father, who is "a very bad diabetic," and his seven-year-old-son, who is not in school "because of lack of parenting." See ECF No. 284, at 6; ECF No. 289, at 4. It is unclear whether Defendant intends to advance such facts as extraordinary and compelling reasons for relief, but to the extent that he does, the Court finds that Defendant's cursory assertions do not overcome the extraordinary and compelling threshold for relief. Defendant has not provided medical documentation showing that his parents or son's caregiver are incapacitated, nor has he shown that his family is unable to obtain adequate care, whether through private or public support, from sources other than Defendant. See United States v. Lumpkin, No. 2:12cr192, 2020 WL 7123109, at *1 n.2 (E.D. Va. Dec. 4, 2020).

risk of contracting the disease at his prison facility." <u>United States v. Feiling</u>, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (emphasis added).

To demonstrate a particularized susceptibility to COVID-19, "courts have required defendants to provide evidence that they suffer from a medical condition identified by the Center for Disease Control ("CDC") as a COVID-19 risk factor." <u>United States v. Tatum</u>, No. 3:19cr146, 2022 WL 287695, at *2 (E.D. Va. Jan. 31, 2022). Defendant, for his part, does not allege that he suffers from any medical conditions that put him at an increased risk of severe illness. <u>See</u> ECF No. 284, at 5-7; ECF No. 287, at 9-10; ECF No. 289, at 3-4. Moreover, Defendant is only 38 years old, and he has received at least two doses of the Pfizer-BioNTech COVID-19 vaccine, which significantly reduces his risk of severe illness (despite the existence of COVID-19 variants). <u>See</u> ECF No. 285, at 18. Thus, Defendant has not established that he has a particularized susceptibility to COVID-19.

Defendant likewise fails to establish that there is a particularized risk of contracting COVID-19 at his current facility, FCI Fort Dix. Defendant makes several claims regarding the lax nature of the precautions taken at the facility, ECF No. 284, at 5, but <u>zero</u> inmates at the facility are currently positive

8

with COVID-19, and 83% of inmates at the facility are fully vaccinated.[3]

Because Defendant has not demonstrated that he has a particularized susceptibility to COVID-19 or a particularized risk of contracting it at his facility, the Court concludes that the risks posed by COVID-19 do not constitute extraordinary and compelling circumstances warranting relief at this time.

### 2. Defendant's Norman Claim

Defendant next argues that, were he sentenced after Norman, his Guideline range would be lower because he would no longer qualify as a career offender. ECF No. 284, at 2-4. In Defendant's view, the disparity between his pre-Norman sentence and the sentences of post-Norman offenders constitutes an extraordinary and compelling reason for relief.[4]

---

[3] https://www.bop.gov/coronavirus/index.jsp (last visited Mar. 31, 2022) (indicating that 2,719 inmates are fully vaccinated and that there are no active cases amongst inmates); https://www.bop.gov/locations/institutions/ftd/ (last visited Mar. 31, 2022) (indicating that there are 3,282 total inmates at FCI Fort Dix).

[4] The Government contends that a compassionate release motion is not the "proper vehicle" for Defendant to bring his Norman claim because, in its view, such a claim "is essentially a collateral attack on his sentence" and thus must be brought in a motion pursuant to 28 U.S.C. § 2255. ECF No. 285, at 11. The Court disagrees. Defendant's Norman claim is not cognizable under § 2255 because the Fourth Circuit has held that "sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is later invalidated does not" meet the "remarkably high bar" necessary to warrant relief under § 2255, as such an error does "not affect the lawfulness of the [sentence] itself." United States v. Foote, 784 F.3d 931, 936-37 (4th Cir. 2015). Because Defendant cannot bring his Norman claim under § 2255, or any other statute, § 3582(c)(1)(A)—a statute meant for cases that fall within no other statutory category—is the proper vehicle for Defendant to raise his Norman claim. United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va. 2021); see also McCoy, 981 F.3d at 288.

9

Because Defendant has filed a compassionate release motion on his own behalf, the Court may consider any extraordinary and compelling reason that Defendant may raise. McCoy, 981 F.3d at 284. In McCoy, the Fourth Circuit held that a court may consider as an extraordinary and compelling circumstance the "gross" sentencing disparities that resulted from the First Step Act's changes to the "stacking" provision in 18 U.S.C. § 924(c). Id. at 285-86. Relying on McCoy's logic, Defendant asserts that his sentence disparity as a result of Norman constitutes an extraordinary and compelling reason for relief.

The Fourth Circuit has yet to decide whether a Norman disparity can constitute an extraordinary and compelling reason for relief, but some district courts in this circuit, including the undersigned judge, have concluded that it can. See, e.g., United States v. Elzey, No. 1:09cr288, 2022 WL 316717, at *3 (D. Md. Feb. 2, 2022); United States v. Banks, No. 3:13cr3, 2022 WL 220638, at *3 (W.D. Va. Jan. 25, 2022); United States v. Williams, No. 1:14cr428, 2021 WL 5827327, at *5 (E.D. Va. Dec. 8, 2021); United States v. Hailey, No. 4:11cr13 (E.D. Va. Oct. 8, 2021), ECF No. 78, at 17. Still, the mere existence of a Guideline disparity does not dictate that the Court must reduce Defendant's sentence. Rather, the Court must give "full consideration" to Defendant's "individual circumstances." Spencer, 521 F. Supp. 3d at 610; see also McCoy, 981 F.3d at 288 (noting the "requirement" that courts

conduct "individualized inquiries"). In so doing, the Court concludes that Defendant's Norman claim does not constitute an extraordinary and compelling reason for relief.

While there is a disparity between Defendant's pre-Norman final sentence (196 months) and the range he would likely receive post-Norman (126-158 months),[5] the disparity is not comparable to the "gross" disparities at issue in McCoy. Indeed, the disparities in McCoy ranged from 18 years to more than 30 years, 981 F.3d at 278-79, whereas the disparity here is approximately three to six years. Although it is a sentencing disparity, such disparity is not so drastic that it constitutes an extraordinary and compelling reason for relief—particularly in light of McCoy. See id. at 288 (noting the "exceptionally high standard for relief" imposed by § 3582(c)(1)(A)); see also Hailey, ECF No. 78, at 15-16 (granting compassionate release to a defendant whose pre-Norman Guideline range was "five times greater than the range he would receive were he sentenced today"); Fennell, 2021 WL 5149915, at *5 (finding extraordinary and compelling circumstances present because "the high end of the range that would now apply is more than 10 years less than the Guidelines sentence originally imposed by the court."); United States v. Myers, No. CCB-01-188, 2021 WL 2401237, at *3 (D. Md. June 11, 2021) (denying defendant's motion because

---

[5] Such range accounts for the Court's post-sentencing adjustment of Defendant's original sentence.

11

there was only a 3.5 year disparity between his current sentence and the bottom of his new Guideline range).

The Court acknowledges that some district courts in this circuit have found extraordinary and compelling circumstances present even when a change in career offender status did not yield a significantly lower sentence. See, e.g., Williams, 2021 WL 5827327, at *6 (disparity between 43 and 68 months); United States v. Jones, No. 7:11cr39, 2021 WL 3630459, at *3 (W.D. Va. Aug. 17, 2021) (three year disparity); United States v. Trice, No. 7:13cr34, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021) (disparity between 26 and 51 months). But this Court respectfully takes a different tack for three reasons. First, "stacked" § 924(c) sentences were consistently decades longer than what a defendant would receive today for the exact same conduct, which is why the McCoy court concluded that such sentences could satisfy the extraordinary and compelling threshold for relief. See McCoy, 981 F.3d at 285 (emphasizing "the sheer and unusual length" of § 924(c) sentences and the "gross disparity between those sentences and the sentences Congress now believes to be an appropriate penalty"). Second, unlike the mandatory sentencing scheme at issue in McCoy, a sentencing court can vary downward if it believes that the career offender enhancement is too severe—particularly when the sentence, absent the career offender enhancement, would not be significantly lower than the enhanced sentence. See id. (highlighting the

12

sentencing court's "concern" that "it was required to impose" such a lengthy sentence under § 924(c)). Third, whereas § 924(c) disparities are the result of Congress's acknowledgement that "stacked" § 924(c) sentences were "dramatically longer than necessary or fair," Norman disparities are the result of a change in technical classification under the Guidelines. See McCoy, 981 F.3d at 285 (stressing that § 924(c) disparities are the result of "a legislative rejection of the need to impose sentences under § 924(c), as originally enacted" (internal quotation marks and citation omitted)). For these reasons, the Court concludes that there typically must be a significant disparity between a defendant's pre- and post-Norman Guideline ranges for extraordinary and compelling circumstances to be present, recognizing of course that other case-specific circumstances could make up for the lack of a significant disparity. See McCoy, 981 F.3d at 286-87 (distinguishing between "resentencing an entire class of sentences," which § 3582(c)(1)(A) does not permit, and "allowing for the provision of individual relief in the most grievous cases"). Defendant, for his part, has not made such a showing.

To start, Defendant's disparity arguably results from a technicality. Had Defendant pled to and been convicted of actual distribution—with which he was charged in nine separate counts and admitted to committing—rather than only conspiracy to distribute,

13

then Norman would have been inapposite, as Defendant would have been properly characterized as a career offender when he was sentenced in 2015 (since he still has two prior drug trafficking convictions that qualify under the career offender Guideline). See ECF No. 182, at 9, 12-13. As the Presentence Report makes clear, Defendant was an active participant in the drug-trafficking conspiracy, and he personally distributed large quantities of heroin to various individuals over a 20-month period. See id. at 4-9. Moreover, Defendant's consistent recidivism, which is sharply contrasted with the criminal histories of the defendants in McCoy, 981 F.3d at 274, gives the Court considerable pause in finding that extraordinary and compelling circumstances are present here. Before his offense conduct in this case, Defendant had two prior felony convictions for possession with the intent to distribute cocaine—both of which were committed while Defendant was on probation for a prior drug offense. ECF No. 182 at 11-13. Despite serving several years in prison for his second drug trafficking conviction, Defendant committed the instant offense within one year of being released, again violating his probation. Id. at 13. The Court commends Defendant for his participation in BOP programming after he was sentenced in this case, see ECF No. 289-1, at 1, but given the limited nature of Defendant's Norman disparity and his recidivist criminal history, the Court concludes

14

that Defendant's Norman claim does not constitute an extraordinary and compelling reason for relief.

## IV. CONCLUSION

Because Defendant has not properly exhausted administrative remedies or demonstrated that extraordinary and compelling circumstances warrant relief, Defendant's motion for compassionate release is **DISMISSED AND DENIED**.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to Defendant and counsel of record for the Government.

**IT IS SO ORDERED.**

/s/ 
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 31, 2022

15